**UNITED STATES of America, Plaintiff,**

v.

**ALL FUNDS ON DEPOSIT IN UNITED BANK OF SWITZERLAND, NEW YORK, New York, Account Number 101WA263232000 Up to and Including the Sum of $3,083,376.00 in the Name of Sawan Exchange Company, LLC, and all Proceeds Traceable Thereto, Defendant-in-rem.**

**No. 01 CIV.2091(JSR).**

United States District Court, S.D. New York.

March 1, 2002.

Daniel Margolis, Daniel S. Ruzumna, Assistant United States Attorney, United States Attorney's Office, New York City, for Plaintiff.

Peter N. Wang, Friedman, Wang & Bleiberg, P.C., New York City, for Claimant Sawan Exchange Co. LLC.

Mark E. Beck, Anthony A. De Corso, Beck, De Corso, Daly & Kreindler, Los Angeles, CA, admitted Pro Hac Vice per order dated July 6, 2001, for Defendants.

## OPINION

RAKOFF, District Judge.

By Complaint filed March 9, 2001, the Government, proceeding *in rem* under the Civil Asset Forfeiture Reform Act ("CAF-RA"), 18 U.S.C. § 981, sought forfeiture of $3,083,376 held in a New York bank account in the name of Sawan Exchange

Company, LLC ("Sawan") and subject to an order of attachment issued on behalf of the Government. The Complaint alleged that Sawan, a currency exchange company, undertook on behalf of certain of its customers to transfer to Iran sums equivalent to the amount here sought to be forfeited, in violation of Executive Orders promulgated under the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701–07.

Subsequent to the filing of the Complaint, Sawan, as claimant to the account, moved to dismiss the Complaint and to vacate the attachment. Sawan did not contest, for purposes of the motion, that its transfers to Iran were unlawful. But it argued that such transfers did not warrant forfeiture of the monies in the bank account here in issue, because the funds in the account were neither the proceeds of the illegal transfers nor the commingled equivalents thereof.

Following full briefing and oral argument, the Court denied the motion by summary Order dated December 27, 2001. This Opinion will briefly state the reasons for that denial.

The section of CAFRA now codified at 18 U.S.C. § 981(a)(1)(C) subjects to forfeiture a wide range of crime-related property, including any property that "constitutes or is derived from proceeds traceable" either to a violation of any of a long list of federal statutory crimes or to "any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." It is undisputed that such "specified unlawful activity" includes, among much else, the unlawful currency transfers to Iran here alleged.

■ Sawan, however, argues, first, that the only monies that Sawan itself derived from the unlawful transfers were some small customer charges for the transfers (vastly less than the $3,083,376 here at issue) and that it is these small profits that, at most, are now forfeitable from the Sawan account. In support of this argument, Sawan points to § 981(a)(2)(B) of CAFRA, which states in pertinent part that "In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term 'proceeds' means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services," *i.e.*, the provider's net profits. Sawan argues that because, in its view, it was simply providing the lawful service of currency exchange in a manner made unlawful only by certain complicated regulations (forbidding most but not all transfers to Iran), therefore § 981(a)(2)(B) is here applicable.

The Government, by contrast, argues that in arranging forbidden currency transfers to Iran, Sawan was engaged in providing "illegal services," and therefore the relevant definition of "proceeds" is not that found in § 981(a)(2)(B), *supra*, but rather that found in § 981(a)(2)(A), which provides that "In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the terms 'proceeds' means property of any kind obtained, directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."

The Government is right in the conclusion that § 981(a)(2)(A) is the applicable subsection, but not for the reason the Government advances. Rather, as emerged at oral argument on July 10, 2001, *see* transcript, the debate over whether the currency transfers that are here alleged consti-

tute "illegal services" or "lawful services provided in an illegal manner" is irrelevant, because the transfers fall into the separate category of "unlawful activities," as to which § 981(a)(2)(A) expressly applies.

"Unlawful activities" is a term of art in CAFRA, at least so far as it pertains to that "specified unlawful activity" expressly identified in § 981(a)(1)(C) as referring to those unlawful activities defined in 18 U.S.C. § 1956(c)(7)—a category distinguished separately from the numerous other federal criminal violations referenced elsewhere in § 981(a)(1)(C). With respect to these unlawful activities (which, as noted, include the illegal currency transfers here alleged), the definition of the forfeitable proceeds is solely provided by § 981(a)(2)(A), and not in any respect by § 981(a)(2)(B), as shown by the fact that, whereas the latter refers to cases involving "lawful goods or lawful services," the former applies to cases involving "illegal goods, illegal services, [or] unlawful activities...."[1]

Congress, moreover, knew what it was doing when it carved out these specified unlawful activities for broader treatment, in terms of scope of forfeiture, than certain other criminal violations. For § 1956, which is the ultimate source of the specification of "unlawful activities" referred to in § 981, is the federal money-laundering statute, designed to deter those whose money-transferring activities are integral to the success of certain specified crimes. It makes perfect sense that Congress would want to make those engaged (like, allegedly, Sawan) in such unlawful transfers subject to forfeiture of the full amounts so transferred, whereas it might choose to subject those involved in viola-

tions at which the money-laundering statute was not directed to a more narrowly defined scope of forfeiture, at least where the latter were simply providing otherwise lawful services in an unlawful manner.

■ Accordingly, it is § 981(a)(2)(A) that here determines the scope of the forfeitable proceeds, and under that subsection the forfeiture may extend to "property of any kind obtained, directly or indirectly, as the result of the commission of the offense giving rise to forfeiture...." This would include the full sum of monies, alleged to be $3,083,376, that Sawan obtained from its customers in connection with illegally transferring equivalent monies, on the customers' behalf, to Iran.

■ Sawan's fallback argument is that, even if this is so, it does not mean that the Government can forfeit a like amount in unrelated Sawan funds, unless it can show that the monies sought to be forfeited have been commingled with the forfeitable proceeds. The Government responds by arguing that it need not show actual commingling but only, as alleged in some detail in the Complaint, that the same Sawan bank account into which the customers' funds were originally deposited is the account from which the Government now seeks to forfeit monies in the identical amount. *See* Compl. ¶¶ 11–29.

As to this dispute, the relevant statute is the "Civil Forfeiture of Fungible Property Act," codified at 18 U.S.C. § 984. On its face, the statute seems strongly to support the Government's position, for it provides, in pertinent part, that "any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section." 18

---

**1.** Whether "unlawful activities" as used in § 981(a)(2)(A) also includes activities beyond the "specified unlawful activity" referenced in § 981(a)(1)(C) is an issue the Court need not reach here.

U.S.C. § 984(a)(2). The statute also provides that "In any forfeiture action in rem in which the subject property is ... funds deposited in an account in a financial institution ... (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property." 18 U.S.C. § 984(a)(1).

■ Notwithstanding this plain language, Sawan argues that § 984 only comes into play where the Government can not actually trace the underlying forfeitable proceeds on which the forfeiture is ultimately predicated under § 981, whereas here the Government can actually trace such proceeds (albeit, into Iranian hands from which recovery is as a practical matter exceedingly unlikely). While there is language in a case from another judicial district that seemingly supports this view, *see United States v. $3,148,884.40 United States Currency (Seized From Accounts of Bital),* 76 F.Supp.2d 1063 (C.D.Cal.1999), it is premised on an extended discussion of the background to the passage of § 984—a discussion this Court finds irrelevant. The language of § 984 is plain on its face; and where that is so, then not only is there no need to resort to legislative history, but also, under the constitutional doctrine of separation of powers, it is inappropriate to do so. For a Court to infer, from an inevitably selective discussion of the legislative background, that Congress did not mean what it said or, here, that Congress silently intended that the statute would only apply under certain preconditions nowhere even hinted at on the face of the statute, would be to substitute judicial fiat for legislative prerogative. This the Court declines to do.

Accordingly, for the foregoing reasons, the Court, by its Order dated December 27, 2001, denied Sawan's motion to dismiss the Complaint and vacate the attachment.